## Ann B. Baxter *vs.* Massasoit Insurance Company.

A party to a suit who is interrogated, under Gen. Sts. *c.* 129, §§ 46–57, may introduce into his answer any matter relevant to the issue raised by the pleadings, and to which the interrogatory relates; and he is not confined to matters relevant to the issue raised by the interrogatory.

In an action against an insurance company, upon a policy of insurance and also upon an agreement to insure, if it appears that a policy has been filled out and never delivered, but retained in the possession of the defendants' agent, and it is in dispute whether it was filled out in pursuance of any previous completed agreement as to the terms of insurance, the defendants may properly be required to annex such policy, or a copy thereof, to their answers to interrogatories filed by the plaintiff and calling for it.

If in such action there is evidence tending to show that the defendants' agent, under authority conferred upon him, agreed to insure the property of the plaintiff, and accordingly filled out a policy for that purpose and took it to the office of the plaintiff's agent to deliver it to him and receive the premium, but did not find him and therefore retained the policy until the destruction of the property by fire, which was about a month afterwards, the judge is not bound to rule as a matter of law " that the purpose and time of operation of the arrangement respecting the policy had expired " before the loss, but it should be left, under instructions, to the jury to determine whether or not the contract was at an end.

In such action, evidence is competent to prove a usage that where there has been a verbal agreement for insurance, and the terms agreed upon and entered in the books of the company, the contract for insurance is considered as valid for the insured, although the premium is not paid.

CONTRACT. The original declaration contained two counts, upon a policy of insurance for $1000, issued by the defendants to the plaintiff upon her buildings in Newton, which were subsequently destroyed by fire while so insured. Three additional counts were afterwards filed, the first two of which alleged an agreement to insure the same, in consideration of an agreement to pay a premium of six dollars and twenty-five cents; and the last count was upon the policy.

The answer, amongst other things, denied the making of any contract, in any form, and denied the authority of any agent of the defendants to make an agreement to insure in their behalf.

Prior to the filing of the amended counts, interrogatories were filed by the plaintiff to be answered by the defendants, and were answered as follows, the interrogatories and answers being here printed together :

" *Int.* 1. State whether or not Reed & Brother, insurance

agents, and having their office in the Old State House in Boston, were agents of the defendants in the business of insurance during the year 1863. *Ans.* Yes.

" *Int.* 2. Have Reed & Brother continued to be such agents to the present time ? *Ans.* Yes.

" *Int.* 3. State whether or not the defendants, or their said agents, Reed & Brother, in the year 1863 filled out a policy of insurance purporting to be in favor of the plaintiff, on a house in West Newton, for one thousand dollars. Answer this question without stating whether such policy was delivered or not, or whether the same took effect or not as a contract. *Ans.* The defendants did not fill out such policy, but are informed that the agents Reed & Brother did fill out an instrument purporting to be a policy of insurance in favor of the plaintiff on a house in West Newton of the amount named in the interrogatory; but said instrument was not filled out in pursuance of any contract with said plaintiff, nor in accordance with any agreement with any person on behalf of said plaintiff, and the terms thereof were never made known to the plaintiff, nor to any one in her behalf, nor assented to by her nor by any one in her behalf, and said instrument was never delivered to the plaintiff nor to any one in her behalf."

The further answers simply disclosed that the defendants supposed this instrument to be in the possession of their agents, and that they declined to annex it to their answers, in pursuance of the call of the plaintiff.

Subsequently, on motion of the plaintiff, all the latter part of the third answer, after the word "interrogatory," was stricken out by order of the court, on the ground that, though it might be relevant to the issue raised by the pleadings, it was not relevant to the issue raised by the interrogatory; and the defendants were ordered to annex the policy to their answers, which they accordingly did; saving exceptions to both of these orders.

The policy was dated September 8th 1863, and purported to insure the plaintiff on her dwelling-house in West Newton in the sum of $1000 for one year, in consideration of six dollars and twenty-five cents, and was signed by the officers of the

defendants, countersigned by Reed & Brother as their agents, and stamped.

At the trial in the superior court, before *Putnam*, J., the interrogatories and answers, with the omission of that portion of the third answer which had been stricken out, and also the policy, were allowed to be read to the jury, against the defendants' objection.

Horace L. Hazelton testified substantially as follows: "The plaintiff bought the property of Mr. and Mrs. Cushman. I had been her counsel and had charge of her property, and took the deed for her, and found a policy of insurance upon it, issued by the defendants, and payable to a mortgagee, and the mortgage was assigned to the plaintiff. Mrs. Cushman and I went to the office of Reed & Brother; Mrs. Cushman surrendered the old policy, and I applied for a new one, for the benefit of Mrs. Baxter; Reed took his books and entered my application upon the books of the Massasoit Company. I had been accustomed to do business with the Reeds, and they had always sent policies in for the premiums when ready. The premium was not paid. Before a policy came in, I went west and was gone about a month. We had not much conversation, which I can only state in general terms. I remember asking the rate. He said, three fourths per cent.; that this was the usual rate. I said I had property insured like it that was insured at one half per cent. I started to go out. I said, make the policy, but you ought to do it at one half per cent. He entered the matter on his book, and made some remark which I understood substantially to be, ' that property is now insured.' When I returned from the west, he declined giving me the policy and refused to receive the premium."

Mrs. Cushman testified: " I went in and told Mr. Reed that I had given up the house. Hazelton came in and had a talk about insuring it. They said they would insure it. Reed pointed to the clock and said, ' From noon to-day the house is insured.' "

The plaintiff called several persons engaged in the insurance business in Boston, who were allowed to testify, under objection

to a usage, that where there has been an agreement for insurance, the terms agreed upon, and the policy made out, though the premium has not been called for or paid, the policy is considered as being held for the benefit of the insured; and that where there has been a verbal contract and the terms agreed upon, but not reduced to writing, except by memorandum in the books of the company, and the premium is not paid, the agreement is considered binding on the company the moment the memorandum is entered on their books; that the contract is for the benefit of the insured, and the insurance is held as good for the insured. This usage, some of the witnesses stated, related as well to home offices as to cases where foreign offices had only agencies in Boston. The defendants' office was in Springfield.

The defendants introduced evidence in contradiction of Mr. Hazelton and Mrs. Cushman, tending to show that no agreement was reached in the negotiation with Hazelton; that the policy was filled out and within two weeks taken to Hazelton's office to see if it was satisfactory, and if so to deliver it and take the premiums; but Hazelton was absent and nothing further was done.

Reed & Brother were supplied with blank policies, signed by the defendants' officers, and were appointed agents by a written instrument, " with full power to take surveys of property to be insured by " the defendants, " and to indorse upon all policies issued by them, permission for the assured to assign the same or to vary the risk; and all policies of insurance against loss or damage by fire issued by the said agent shall be to all intents valid and binding upon the said Massasoit Insurance Company, when signed by the president and attested by the secretary thereof, and countersigned by the said Reed & Brother." The property was destroyed by fire October 10th 1863.

The defendants asked the court to instruct the jury that, if the evidence failed to prove a contract by the policy, the plaintiff could not recover upon the agreement to insure set forth in the first and second of the additional counts, because the evidence did not show sufficient authority in Reed & Brother to make

such an agreement, and because the purpose and time of opera-
tion of such an arrangement had expired. The judge did not
so rule, but submitted the case to the jury under instructions
which were not otherwise excepted to, than on account of the
refusal to give the instruction above requested.

The jury returned a verdict for the plaintiff, and the defend-
ants alleged exceptions.

*A. L. Soule,* for the defendants.

*D. E. Ware,* for the plaintiff.

HOAR, J.*  The ruling of the superior court that a part of the
defendants' answer to the plaintiff's third interrogatory should
be stricken out as not responsive, we think erroneous. By *St.*
1851, *c.* 233, which was the first act establishing the new prac-
tice in this commonwealth, and by which either party was per-
mitted to interrogate the other for purposes of discovery, the
party interrogated was allowed to introduce into his answer any
matter explanatory of his admissions or denials, if relevant to
the interrogatory which he was answering, but not otherwise.
§ 104.  Under that statute no case came before this court in
which the construction of that section was the subject of final
decision ; but we understand that it was uniformly held in the
court of common pleas that matters not relevant to the inter-
rogatory, though relevant to the defence, were not to be inserted
in an answer by a defendant.  14 Law Reporter, 393, 518, 575,
576, 682.  But the unfairness of the rule was the subject of
much complaint, and it was altered by the legislature of the
next year; *St.* 1852, *c.* 312, § 67 ; and, as then modified, was
incorporated into the General Statutes.  Gen. Sts. *c.* 129, § 51.
It is in these words : " The party interrogated may introduce
into his answer any matter relevant to the issue to which the
interrogatory relates."  The language used by the learned judge
in allowing the motion to strike out a part of the answer, that
" though it may be relevant to the issue raised by the pleadings,
it is not relevant to the issue raised by the interrogatory," in
departing from the language of the statute, occasions a change

---

* WELLS, J., did not sit in this case.

in its meaning. The statute does not speak of an "issue raised by the interrogatory," but of "the issue to which the interrogatory relates;" that is, the issue in the cause, between the parties, upon which the interrogatory calls for a fact which may be used by the party interrogating as evidence. The ruling was quite as strict as the requirement of the statute of 1851, which had been repealed. But we are of opinion that the defendants had a right to make the statements which were stricken from the answer. The issue between the parties, to which the interrogatory related, and upon which the jury finally passed, was whether a policy was made by the defendants as a contract or evidence of a contract, binding upon them. There was no issue as to the mere writing such a paper, as an exercise in penmanship. It would have been wholly irrelevant and immaterial, and the plaintiff would have had no right to inquire about it, if that were all. But the qualifications which the defendants proposed to give to the admission of having written the policy were material and important; and had a direct bearing upon the issue in which the answer would be evidence. *Williams* v. *Cheney*, 3. Gray, 220.

Nor was the exclusion of this evidence cured by the subsequent admission of other evidence introduced by the defendants to the same point. The answers were used as evidence by the plaintiff to support her case; and they tended to support it in a manner which they would not have done, if the whole had been admitted. The denials of the defendants, which accompanied and qualified the admission of the fact of making the policy, were not before the jury.

As the exclusion of a part of the answers is a sufficient reason for sustaining the exceptions, and there must be a new trial, t is not essential to consider very fully the other grounds of exception. Neither of them is sustained, and they may not arise again. But to avoid misapprehension, and as a guide for another trial if it should be had, we may add that we have no doubt that the defendants were properly required to furnish a copy of the policy; that the court were not bound to rule as a matter of law "that the purpose and time of operation of the

arrangement respecting the policy" which the plaintiff sought to prove "had expired" before the loss, and the policy had thereby become inoperative; but that there was evidence for the jury on this point, which should have been submitted to them with proper instructions, if asked for; and that the evidence of the custom was properly admitted. If the jury were satisfied that the defendants made a policy, and held it for the plaintiff's benefit until there should be an opportunity to pay the premium and receive the policy, it would still be the duty of the plaintiff to be ready to pay the money and accept the paper within a reasonable time; and if that time had expired, and the defendants had made reasonable exertions to notify the agent who made the application that the policy was ready and payment expected, the contract might be treated as at an end.

Whether the agent's commission would prove an authority to make any contract of insurance except by a policy signed as therein stated, is a question certainly not free from doubt, but which the finding of the jury made immaterial.

*Exceptions sustained.*